[No. 44325. En Banc. July 14, 1977.]

*In the Matter of the Estate of*
MINNIE M. HASTINGS.

ERMINIE JEAN HASTINGS RUGGLES, *Petitioner,* v. SEATTLE–
FIRST NATIONAL BANK, *as Executor,* ET AL,
*Respondents.*

*Reaugh, Hart, Allison, Prescott & Davis, J. E. Fisch-naller,* and *Dan Reaugh,* for petitioner.

*Davis, Wright, Todd, Riese & Jones, F. Steven Lathrop, Steven Andreasen, Preston, Thorgrimson, Ellis, Holman & Fletcher,* and *Ronald E. Cox,* for respondents.

HICKS, J.—This is a case of interpretation of Washington's pretermitted heir statute, RCW 11.12.090.[1] We granted review because there are two decisions of this court apparently in conflict on the singular issue presented.

---

[1]"If any person make his last will and die leaving a child or children or descendants of such child or children not named or provided for in such will, although born after the making of such will or the death of the testator, every such testator, as to such child or children not named or provided for, shall be

That issue is, as stated by the Court of Appeals: When a child of a testatrix was deceased at the time the will was made and the testatrix neither named nor provided for the deceased child or one of the descendants of the deceased child, does RCW 11.12.090 require that the testatrix be deemed to have died intestate as to the deceased child? *In re Estate of Hastings,* 15 Wn. App. 300, 548 P.2d 568 (1976). We answer in the negative and affirm the trial court and the Court of Appeals.

On March 7, 1956, Minnie Hastings executed her last will and on May 7, 1971, she died. During her lifetime Mrs. Hastings had three children, all of whom predeceased both the date of her death and the date of execution of her will. Two of these three children left no descendants, but Mrs. Hastings' third child, Harlow, was survived by two children, Douglas Hastings and Erminie Ruggles, petitioner herein.[2] Douglas had two sons, great–grandchildren of testatrix. The will executed by Minnie Hastings on March 7, 1956, names and provides for Douglas Hastings and his two children and other collateral relatives. It does not name or provide for any of Minnie's three predeceased children or her grand-daughter, Erminie. Erminie instituted this action to obtain a decree declaring her to be entitled to relief under RCW 11.12.090. The trial court found that she was not entitled to such relief under the controlling case of this jurisdiction, *In re Estate of Halle,* 29 Wn.2d 624, 188 P.2d 684 (1948). The Court of Appeals affirmed, also relying upon *Halle.*

We agree that *Halle* controls the instant case. The pertinent facts in *Halle* were identical to those in the case at bench. There the son of the testatrix predeceased the execution of the will. He was not named in the will nor was his

deemed to die intestate, and such child or children or their descendants shall be entitled to such proportion of the estate of the testator, real and personal, as if he had died intestate, and the same shall be assigned to them. and all the other heirs, devisees and legatees shall refund their proportional part." RCW 11.12.090.

[2]As the parties agree, application of RCW 11.12.090 is unaffected by the fact that Erminie is the adopted, rather than the natural child of Harlow Hastings. *In re Estate of Hebb,* 134 Wash. 424, 235 P. 974 (1925); RCW 26.32.140.

son, the testatrix' grandson. The grandson claimed he should take under the statute and we held against him:

> [W]hen a child of a testator is deceased at the time the will is made, § 1402 does not require that the testator name or provide for either such deceased child or the descendants of such deceased child.

*In re Estate of Halle, supra* at 635. Rem. Rev. Stat. § 1402 is the former codification of RCW 11.12.090. They are identical in wording. Clearly, according to *Halle,* a testator does not die intestate as to a predeceasing child.

We granted discretionary review in this case in the face of *Halle,* because of an earlier case, *In re Estate of Hebb,* 134 Wash. 424, 235 P. 974 (1925). *Hebb,* also with indistinguishable facts, resulted in the grandchild taking an intestate share. *Hebb* was neither reviewed nor recognized in *Halle.* Petitioner contends *Hebb* is the better law and should be applied to the facts before us. Further, petitioner tells us that *Halle* is poorly reasoned and that *Hebb* is supported implicitly by *In re Estate of Phillips,* 193 Wash. 194, 74 P.2d 1015 (1938).

We are not convinced that *Hebb* is the better law or is supported by *Phillips.* In *Phillips* we held that when a child of a decedent testator is named in the will, the child's issue is not entitled to take any share of the decedent's estate. We do not see this as impliedly supporting *Hebb* or petitioner's position. The critical fact is that in *Phillips* the child of the testatrix was living at the time his mother executed her will. It is unlikely that the *Phillips'* reasoning conflicts with *Halle* in any way since the *Halle* opinion was written by the very judge who sat at trial in *Phillips* and was affirmed.

*Halle* directly addressed the issue before us; *Hebb* did not. As noted in *In re Estate of Harper,* 168 Wash. 98, 102, 10 P.2d 991 (1932), our concern in *Hebb* was "whether an adopted child was a 'descendant' of his adoptive parents, within the contemplation of the statute". *Hebb* did not consider whether the child of the testator in that case died before or after the execution of the will. It is apparent that

in *Hebb* this court assumed the statute would apply once the "real" issue in the case was resolved, *viz.*, whether an adopted child has the same rights as a natural child under the pretermitted heir statute. After setting out the statute, the court said:

Under this statute, if a person make his last will and die leaving a child or children or "descendants of such child or children not named or provided for in the will," then such child or children or their descendants shall take as though he died intestate. In the present case, the concrete question is whether Marion Elkanah Hebb was a descendant of his adoptive father.

*In re Estate of Hebb, supra* at 426. There was no analysis made of Rem. Rev. Stat. § 1402 in respect to the issue of a predeceasing child. Without further inquiry into the applicability of the statute, an intestate share was awarded to the adopted grandchild.

■■ However, in *Halle* we addressed the issue directly, examining the statute and determining that it had no application where the child of the testator predeceased the execution of the will. We reiterate what we stated in *Halle:*

All the authorities hold that the purpose of pretermitted heir statutes is to provide against the disinheritance of a child or children of the testator through inadvertence or oversight. None of the cases or authorities briefed or discussed in that or the instant case states that the purpose of such statutes is to guard against the disinheritance of a descendant of such child or children. We believe *Halle* to be the better result and that *Halle* by implication overruled *Hebb. Halle* has been the law in this jurisdiction for nearly 30 years, and we find no compelling reason to overrule it and extend the reach of the statute to children who predecease the making of a will.

Petitioner does not urge us to construe the statute so that she would take an intestate share as a pretermitted heir in her own right. It is clear from *Phillips* that a grandchild takes only by representation if his parent is a pretermitted heir. Rather, petitioner argues that the statute

applies to her father, although he was dead at the time of the will's execution.

In determining the applicability of this statute, as in passing on the meaning of any legislative enactment, we look to the language of the statute, the policy behind it and the action of the legislature in regard to it. We are aided by applicable decisional law. However, the plethora of conflicting authorities from other jurisdictions cited to us in the excellent briefs of both parties is of little help, as the following discussion of the various statutes will explain.

Pretermitted heir statutes existed originally for the protection of children born after the execution of the will, those most likely to be mistakenly omitted. The very meaning of pretermitted is "overlooked." Today the most typical statute, applies only to after–born children, where the policy of protecting against inadvertent disinheritance is legitimately served. In a minority of jurisdictions, children existing at the time of execution of the will are within legislative protection but generally consideration is given to the intent of the testator. *See* Mathews, *Pretermitted Heirs: An Analysis of Statutes,* 29 Colum. L. Rev. 748, 752 (1929).

Whether protecting preexisting or after–born children or both, two types of statutes have been enacted. One is commonly called the Massachusetts type and the other is called the Missouri type. The typical Massachusetts–type statute provides that if the testator omits to provide for any of his children or the issue of a deceased child, such omitted child or issue shall take as though the testator had died intestate *unless it appears that the omission was intentional and not occasioned by accident or mistake.* This statute, most common where protection extends beyond after–born to preexisting children, puts the burden on the claimed pretermitted heir to prove that the testator did not intentionally disinherit him. "Intention is the material factor in determining its applicability." *Will Failing to Provide for Child,* Annot., 65 A.L.R. 472, 473 (1930). Most jurisdictions

with Massachusetts–type statutes allow extrinsic evidence to show intentional disinheritance.

On the other hand, the Missouri–type statutes omit all reference to intent and the statutes arbitrarily apply unless the child is named. 65 A.L.R. 472, 481 (1930); 26A C.J.S., *Descent & Distribution* § 45 (1956). Under these statutes it is immaterial that the testator intended to disinherit a child or descendants unless there is language in his will indicating his intention. *Will—Construction—Extrinsic Evidence*, Annot., 94 A.L.R. 26, 211 (1935). *See also Pretermission Statutes—Application*, Annot., 170 A.L.R. 1317 (1947).

We are one of a minority of states that, by the terms of our statute, disregards intent and allows both preexisting and after–born children the presumption of being inadvertently overlooked, though as one writer said:

> Fundamentally, [the policy behind these statutes] is a desire to prevent *inadvertent* disinheritance. Presumably a parent, so it goes, desires to provide for his issue. The likelihood that issue subsequent to the will was unforeseen, otherwise it would have been provided for, leads a. solicitous legislature to do what it believes would have been desired had the true circumstances been known.
>
> . . .
>
> . . . [However,] [i]t would seem reasonable to suggest that the omission of an existing child or grandchild is more likely to be intentional than otherwise. This is recognized in but five of the [20] jurisdictions [allowing preexisting children protection under the statute]. . . . In their statutes the will is affected only "if it appears that such omission was not intentional, but was made by accident or mistake." This accords with fact. It places the burden on the child to prove the accidental nature of his omission, which, if proved, justifies the inference of intent to provide. The rest, however, establish the opposite presumption by the phrase "unless it appears that such omission was intentional," or a similar clause.

(Italics ours.) Mathews, *supra* at 750, 752. Washington is not in either above category, but joins a minority within a minority (five other states) in having a mandatory

Missouri–type statute applying to preexisting children and, by the terms of the statute, with no regard to the testator's intent. *See* Bordwell, *The Statute Law of Wills,* 14 Iowa L. Rev. 172, 175 (1929).

However, this court and the courts of the other five states have attempted to construe the statutes in light of the purpose behind them so as to permit, de facto, the testator's intention to have some weight. In our own cases there is dicta referring to intent and the policy behind the statute, although the wording of our statute gives no regard to it. We said in *Gehlen v. Gehlen,* 77 Wash. 17, 20, 24, 137 P. 312 (1913):

> As pointed out . . . the purpose of this and similar statutes is not to declare as a policy of law that a testator shall not disinherit any of his children, nor to compel him to make some provision, whether substantial or otherwise, for any of them. Its purpose was merely to provide against any child being disinherited through inadvertence of the testator when making his will. Any construction of the statute which would have the necessary effect of compelling such a provision for any possible child would seem to be unwarranted as broader than the purpose of the statute, and should not be adopted unless the real purpose of the statute, namely, to prevent pretermission of any child, can only be accomplished by such a construction. . . .
>
> . . .
>
> After all, in applying this statute, as in other connections, the intention of the testator, when made clearly apparent on the face of the will, must prevail.

(Citations omitted.)

We emphasize that the purpose of our statute is to protect against *unintentional* disinheritance and we should construe it in a way that is "consonant with the obvious purpose". *Gehlen v. Gehlen, supra* at 24. The policy of protecting heirs who are omitted from a will due to the failing mind of an elderly testator is a sound one. Whether a mandatory statute, which makes no allowance for the intent of the testator and gives to preexisting children the

presumption of being inadvertently omitted actually furthers such a policy is questionable. Writers have criticized such an approach as contrary to what would logically be the present–day presumption, and assert that it has resulted in *decisions completely opposed to the stated policy concern.* 29 Cal. L. Rev. 661, 664 n.12 (1941).

Surely reason would tell us that, if a child is omitted from a will, the omission is most likely intentional rather than an oversight, and particularly where it is a deceased child that is omitted. Extending the protection of this statute to include predeceasing children would not further the policy behind the statute, it would further a fiction. We choose to construe the statute narrowly for that reason and for the reason that it is in derogation of the right as it existed at common law after the 16th century to disinherit children and dispose of one's property by will as one chooses. "American courts have thought of testamentary freedom not only as a natural almost political right, but a natural condition of all law as well." Touster, *Testamentary Freedom and Social Control,* 6 Buffalo L. Rev. 251, 255 (1957). *See also Mansfield v. Neff,* 43 Utah 258, 134 P. 1160, 1163 (1913); 44 Yale L.J. 841 (1935).

We think the history of this statute impels a narrow construction. In 1917 the legislature amended the statute.[3] In commenting on this amendment we will utilize the model Justice Steinert provided in *In re Estate of Phillips,* 193 Wash. 194, 74 P.2d 1015 (1938), breaking the statute into three clauses: a "conditional" clause, an "intestacy" clause and a "resulting" clause. The amendment clearly narrowed

[3]Prior to amendment the statute read as follows:

"If any person make his last will and die, leaving a child or children, or descendants of such child or children, *in case of their death,* not named or provided for in such will, although born after the making of such will, or the death of the testator, every such testator, so far as he shall regard such child or children, *or their descendants,* not provided for, shall be deemed to die intestate, and such child or children, or their descendants, shall be entitled to such proportion of the estate of the testator, real and personal, as if he had died intestate, and the same shall be assigned to them, and all the other heirs, devisees, and legatees shall refund their proportional part." (Italics ours.) Rem. & Bal. Code § 1326 (1910).

the scope of the statute to first–generation lineal descendants. By eliminating the words "in case of their death" from the conditional (first) clause, we believe the legislature intended to eliminate the requirement that the testator name his grandchildren *in case of the death* of his child. By eliminating from the intestacy (second) clause the words "or their descendants," the legislature eliminated any possibility that, by virtue of this statute, a testator should die intestate as to a grandchild.

We stated in *Phillips,* at page 202: "From a material change in the wording of a statute, a change in legislative purpose must be presumed." We believe the legislature's purpose was to narrow the application of this mandatory statute, but still effectuate the policy behind it. Following the amendment, the application of the statute is limited to the following instances:

1. When the child is living at the time the will is executed and is alive when the testator dies, the child would take in his own right as a pretermitted heir;

2. When the child is living at the time the will is executed but dies prior to the death of the testator, his descendants would take the intestate share of their parent by representation;

3. When the child is born after the execution of the will, he would take in his own right under the statute;

4. When the child is born after the execution of the will but dies prior to the death of the testator, any descendants he may have would take by representation.

We adhere to the construction we placed on the statute in *In re Estate of Halle,* 29 Wn.2d 624, 188 P.2d 684 (1948): A testator will not be deemed to have died intestate as to a child who was not living when the will was executed. That this should continue as the construction of the statute is buttressed by the fact that the legislature had the statute before it when the new probate code was enacted in 1965 (Probate Law and Procedure—1965 Act, RCW Title 11), and reenacted it without change. Quoting

from *McKinney v. Estate of McDonald,* 71 Wn.2d 262, 264, 427 P.2d 974 (1967), the court said:

> When the legislature reenacts a statute which has been construed by the highest court of the state and does not amend it, it is assumed that the legislature intended to incorporate the judicial construction in the absence of compelling reason why such an assumption should not be made.

In fact, there is a compelling reason to assume that the reenactment of the statute without modification was not just a legislative oversight but an indication that it agreed with our construction of the statute in *Halle.* According to J. Steincipher, *Washington Probate Practice and Procedure* 94 (1966), the probate · committee recommended amendments to the statute primarily to insert intent. The legislature examined the statute nearly 20 years· after *Halle,* and did not amend it, thereby acquiescing in our construction of it.

We are satisfied that the construction we placed on RCW 11.12.090 in *Halle* is harmonious with the common law, the intent of the testator in most, if not all, cases, the public policy concern behind the statute, and the intent of the legislature.

Affirmed.

WRIGHT, C.J., ROSELLINI, HAMILTON, STAFFORD, UTTER, BRACHTENBACH, and DOLLIVER, JJ., and HENRY, J. Pro Tem., concur.